**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SEBASTIAN ZAPETA, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

                          Plaintiff,

              v.

IZZYS BBQ INC.
        d/b/a IZZY'S BROOKLYN SMOKEHOUSE,
IZZY'S BBQ MANHATTAN LLC
        d/b/a IZZY'S SMOKEHOUSE,
ISRAEL EIDELMAN,
        a/k/a SRULI "IZZY" EIDELMAN

                          Defendants.

---

**Case No:**

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

        Plaintiff, SEBASTIAN ZAPETA (hereinafter, "Plaintiff"), on behalf of himself and others

similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective

Action Complaint against Defendants, IZZYS BBQ INC. d/b/a IZZY'S BROOKLYN

SMOKEHOUSE, IZZY'S BBQ MANHATTAN LLC d/b/a IZZY'S SMOKEHOUSE ("Corporate

Defendants"), and ISRAEL EIDELMAN ("Individual Defendant") (each individually,

"Defendant" or, collectively, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving; (2) unpaid wages, including overtime, due to improper rounding of hours; (3) liquidated damages; and (4) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving; (2) unpaid wages, including overtime, due to improper rounding of hours; (3) unpaid spread of hours premiums; (4) compensantion for late payment of wages; (5) statutory penalties; (6) liquidated damages; and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.      At all relevant times herein, Plaintiff was and is a resident of Kings County, New York.

6.      Defendants collectively own and operate a two (2) restaurant enterprise in New York under the trade name "Izzy's" at the following locations:

    a.  "Izzy's Brooklyn Smokehouse" - 397 Troy Avenue, Brooklyn, NY 11213; and

    b.  "Izzy's Smokehouse" - 660 Amsterdam Avenue, New York, NY 10025.

(collectively, the "Restaurants")

7.      Defendants own and operate the Restaurants as a single integrated enterprise. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

  a.  All the Restaurants are advertised to the public as being owned by the Individual Defendant ISRAEL EIDELMAN. *See* **Exhibit A**;

  b.  Individual Defendant ISRAEL EIDELMAN is the principal listed on Defendants' liquor licenses for both Restaurants. *See* **Exhibit B** – Copies of Defendants' liquor licenses, provided by the New York State Liquor Authority;

  c.  Defendants advertise the Restaurants jointly on their website, https://www.izzyssmokehouse.com/locations/. *See* **Exhibit C**;

  d.  Defendants advertise the Restaurants jointly on their facebook profile, https://www.facebook.com/izzysbbq. *See* **Exhibit D**;

  e.  The Restaurants share a common smokehouse theme, have similar décor and ambiences which are inspired by modern barbecue smokehouses, use the same logo offer the same menus focused on barbecue cuisine, and have the same suppliers. The Restaurants' shared single menu is advertised on Defendants' website. *See* **Exhibit E**;

  f.  Defendants offer online ordering for both Restaurants on their website. *See* **Exhibit F**; and

  g.  The address for service of process for Corporate Defendant IZZY'S BBQ MANHATTAN LLC, the corporate entity for Defendants' Izzy's Smokehouse, is

397 Troy Avenue, Brooklyn, NY 11213, which is the principal place of business for Defendants' Izzy's Brooklyn Smokehouse. *See* **Exhibit G.**

8.    Corporate Defendant IZZYS BBQ INC. d/b/a IZZY'S BROOKLYN SMOKEHOUSE is a domestic business corporation organized under the laws of New York with a principal place of business located at 397 Troy Avenue, Brooklyn, NY 11213 and an address for service of process located at 454 Montgomery Street, Brooklyn, NY 11225.

9.    Corporate Defendant IZZY'S BBQ MANHATTAN LLC d/b/a IZZY'S SMOKEHOUSE is a domestic limited liability company organized under the laws of New York with a principal place of business located at 660 Amsterdam Ave, New York, NY 10025, and an address for service of process located at 397 Troy Avenue, Brooklyn, NY 11213.

10.    Individual Defendant ISRAEL EIDELMAN is the owner of Corporate Defendants. ISRAEL EIDELMAN exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. ISRAEL EIDELMAN exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules, conditions of employment, and determine the rate and method of compensation of employees, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Restaurants could complain to ISRAEL EIDELMAN directly regarding any of the terms of their employment, and ISRAEL EIDELMAN would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. ISRAEL EIDELMAN exercised functional control over the business and financial operations of Corporate Defendants. ISRAEL EIDELMAN had the power and authority to supervise and control

supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

11.  At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

12.  At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

13.  At all relevant times, Plaintiff and Class Members were Defendants' employees within the meaning of NYLL §§ 2 and 651.

14.  At all relevant times, Defendants were Plaintiff's and Class Members' employers within the meaning of NYLL §§ 2 and 651.

15.  Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

<u>**FLSA COLLECTIVE ACTION ALLEGATIONS**</u>

16.  Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt, front-of-house and back-of-house employees (including, but not limited to, waiters, delivery persons, servers, runners, bussers, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (herein, "FLSA Collective Plaintiffs").

17.  At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay

employees their (1) proper wages, including overtime, due to time-shaving and (2) proper wages, including overtime, due to rounding. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

18.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

### RULE 23 CLASS ALLEGATIONS – NEW YORK

19.     Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including, but not limited to, waiters, delivery persons, servers, runners, bussers, cashiers, porters, cooks, line-cooks, food preparers, hostesses, stock persons, and dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (the "Class" or "Class Members").

20.     The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the

precise number of such persons is unknown, the facts on which the calculation of that number are presently based are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class.

22.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices of Defendants of: (i) failing to pay proper wages, including overtime, due to time-shaving; (ii) failing to pay proper wages, due to improper rounding of hours; (iii) failing to pay spread of hours premiums; (iv) late payment of wages; (v) failing to provide proper wage statements per requirements of the NYLL; and (vi) failing to properly provide wage notices, at dates of hiring and annually, per requirements of the NYLL.

23.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

24.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

25.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class Members are small, in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26.     Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.  Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

b.  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and Class Members properly;

c.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d.  Whether Defendants properly and timely compensated Plaintiff and Class Members for all hours worked;

e.  Whether Defendants rounded Plaintiff's and Class Members hours worked down to their detriment;

f.  Whether Defendants paid Plaintiff and Class Members for all hours worked;

g.  Whether Defendants paid Plaintiff and Class Members their lawful wages timely on a weekly basis as required by the NYLL;

h.  Whether Defendants properly paid employees their corresponding spread of hours premiums as required under the NYLL;

i.  Whether Defendants provided proper wage statements to Plaintiff and Class Members, pursuant to the requirements of the NYLL; and

j.  Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members, pursuant to the requirements of the NYLL.

## STATEMENT OF FACTS

28.   In or around February 2022, Plaintiff SEBASTIAN ZAPETA was hired by Defendants to work as a Porter for Defendants' Izzy's Brooklyn Smokehouse located at 397 Troy

Avenue, Brooklyn, NY 11213. Plaintiff's employment by Defendants terminated in or around February 2024.

29.    At all relevant times, Plaintiff was scheduled by Defendants to work five (5) days per week (Sundays through Thursdays) from 10:00 a.m. to 6:00 p.m, for a total of forty (40) hours per week. FLSA Collective Plaintiffs and Class Members were scheduled to work similar hours each week.

30.    At all relevant times, Plaintiff was compensated by Defendants at an hourly rate of $15.50 per hour. Plaintiff was always paid by Defendants in the form of checks. Throughout his employment, Plaintiff was variously paid on a weekly and bi-weekly basis.

31.    At various times, Defendants paid Plaintiff and Class Members on a bi-weekly basis, despite the NYLL requiring manual laborers to be paid on a weekly basis. Plaintiff and Class Members were manual workers. Plaintiff's regular tasks included, but were not limited to, meal preparation, cleaning, and dishwashing. Class Members' tasks included similar work. Plaintiff and Class Members spent more than 25% of their working time engaged in "physical labor". They therefore qualify as manual laborers under the NYLL, and Defendants' periodic bi-weekly pay frequency to Plaintiff and Class Members throughout their employment was unlawful. Under the NYLL §191(1)(a)(i), Defendants were required to pay Plaintiff his wages due within seven (7) days of the end of the week in which they were earned. Simlarly, Class Members are manual workers and were also improperly paid on a bi-weekly basis by Defendants throughout their employments.

32.    At all relevant times, Defendants subjected Plaintiff to a policy of timeshaving, in violation of the FLSA and the NYLL.

33.    At all relevant times, Defendants routinely hosted private events at the Restaurants.

34. Throughout Plaintiff's employment, approximately three (3) times per week, Defendants required Plaintiff to stay past his scheduled end time of 6:00 p.m. to perform additional work, until up to 8:00 p.m. Additionally, Defendants always required this from Plaintiff when Defendants hosted a private event. Plaintiff was not paid for this additional work.

35. At all relevant times, Defendants regularly adjusted Plaintiff's additional, unscheduled hours worked, down to his scheduled hours, despite the fact that Plaintiff actually worked these hours. Plaintiff was regularly missing approximately six (6) to nine (9) hours on his paychecks – hours which Plaintiff actually worked.

36. At all relevant times, FLSA Collective Plaintiffs and Class Members were similarly required by Defendants to work additional hours past their scheduled end times, which Defendants also timeshaved.

37. At all relevant times, Defendants subjected Plaintiff to a policy of detrimental rounding, in violation of the FLSA and the NYLL.

38. At all relevant times, Defendants' rounded Plaintiff's hours down to his detriment. Plaintiff's weekly hours paid were always whole or half numbers (ending in ".00" or ".50") which were also always lower than the actual amount of hours Plaintiff worked each week.

39. At all relevant times, Defendants similarly rounded FLSA Collective Plaintiffs' and Class Members' hours down detrimentally.

40. At all relevant times, Defendants subjected Plaintiff to a policy of failing to compensate spread of hours premiums for all of Plaintiff's days worked with a spread of ten (10) or more hours.

41. As described above, Plaintiff frequently worked shifts lasting ten (10) or more hours, up to eleven (11) hours. However, as also described above, Defendants regularly adjusted

Plaintiff's hours worked during these workdays exceeding ten (10) hours down to approximately eight (8) hours. When Defendants adjusted Plaintiff's hours from more than ten (10) to below ten (10) hours, Defendants also intentionally failed to provide any spread of hours premiums to Plaintiff for those workdays.

42.    At all relevant times, Defendants similarly failed to compensate spread of hours premiums to Class Members for all their workdays with a spread of ten (10) or more hours.

43.    Plaintiff and Class Members did not receive wage statements that were in compliance with the NYLL. Plaintiff and Class Members received fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation. Due to Defendants' illegal policy of rounding and time-shaving, Plaintiff's and Class Members' wage statements failed to include the number of regular hours worked, and the number of overtime hours worked in violation of the NYLL.

44.    Defendants failed to provide Plaintiff and Class Members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiff and Class Members did not receive wage notices either upon being hired or upon wage changes since the date of hiring, in violation of the NYLL.

45.    In failing to provide proper wage statements and notices to Plaintiff and Class Members, as required under the Wage Theft Protection Act ("WTPA"), Defendants have generated a concrete harm to an interest identified by the New York State legislature. Defendants' failure to provide these documents frustrates New York's objective of, and Plaintiff's interest in, ensuring that employees receive all wages owed. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting the WTPA's wage notice and wage statement

provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.

46.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

47.     Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

48.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010

S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

49.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

50.     Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

51.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

52.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by the NYLL.

53.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.,* 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

54.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

55.      "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

56.      Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class

Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

57.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

58.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

59.    Whether *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

60.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

61.     Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employee's concrete interest in paid properly and timely.

62.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices with *accurate* information, Defendants were able to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices, continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. The failure to: (i) timely pay Plaintiff and Class Members, (ii) account for all hours worked by employees

their wage statements, (iii) compensate Plaintiff and Class Members their proper spread of hours premium, has caused Plaintiff to struggle to timely pay his bills.

63.    Here, Defendants' failure <u>goes</u> beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members by weakening their ability to contest the sufficiency of Defendants' wage payments to them.

64.    Defendants knowingly and willfully operated their business with a policy of timeshaving Plaintiff's, FLSA Collective Plaintiffs', and Class Members' hours worked.

65.    Defendants knowingly and willfully operated their business with a policy of detrimentally rounding Plaintiff's, FLSA Collective Plaintiffs', and Class Members' hours worked.

66.    Defendants knowingly and willfully operated their business with a policy of failing to compensate spread of hours premiums to Plaintff, FLSA Collective Plaintiffs, and Class Members for all their workdays with a spread of ten (10) or more hours.

67.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

68.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by the NYLL.

69.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF FAIR LABOR STANDARDS ACT**

70.     Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as fully set forth herein.

71.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

72.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

73.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

74.     At all relevant times, Defendants had a policy and practice that failed to pay proper wages, including overtime, to Plaintiff and FLSA Collective Plaintiffs due to time shaving.

75.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their wages, incluing overtime, due to a policy of impermissible rounding.

76.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

77.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, when Defendants knew or should have known such was due.

78.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

79.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

80.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving and impermissible rounding; plus an equal amount as liquidated damages.

81.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## **VIOLATION OF NEW YORK LABOR LAW**

82.    Plaintiff realleges and incorporates all the above allegations of this Class and Collective Action Complaint as if fully set forth herein.

83.    At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

84.    Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of timeshaving.

85.     Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of impermissible rounding.

86.     Defendants knowingly and wilfullly violated Plaintiff's and Class Members' by failing to compensate all spread of hours premiums owed for all their days worked with a spread of ten or more hours.

87.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members their wages in a timely manner, as required under the NYLL.

88.     Defendants failed to properly notify Plaintiff and Class Members of their hourly pay rates and overtime rates, in direct violation of the New York Labor Law.

89.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage notices, at their dates of hiring and annually thereafter, as required under the NYLL.

90.     Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the NYLL.

91.     Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, including overtime, due to time shaving and impermissible rounding, unpaid spread of hours premiums, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including overtime, due to Defendants' policy of impermissible rounding of hours, due under the FLSA and the NYLL;

d.  An award of unpaid wages, including overtime, due to Defendants' policy of time-shaving, due under the FLSA and the NYLL;

e.  An award of unpaid spread of hours, due under the NYLL;

f.  An award of compensation for late payment of wages, due under the NYLL;

g.  An award of liquidated damages as a result of Defendants' willful failure to pay wages, including overtime wages, pursuant to the FLSA and the NYLL;

h.  An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

i.  Designation of Plaintiff as Representatives of FLSA Collective Plaintiffs;

j.  Designation of this action as a class action pursuant to F.R.C.P. 23;

k.  Designation of Plaintiff as Representative of the Class; and

l.  Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 23, 2024                                          Respectfully submitted,
       New York, New York

                                                     **LEE LITIGATION GROUP, PLLC**
                                                   C.K. Lee (CL 4086)
                                                   Anne Seelig (AS 3976)
                                                   148 West 24th Street, 8th Floor
     New York, NY 10011
     Tel.: 212-465-1188
     Fax: 212-465-1181

     *Attorneys for Plaintiff,*
     *FLSA Collective Plaintiffs,*
     *and the Class*

By:    <u>/s/ *C.K. Lee*             </u>
          C.K. Lee, Esq.